UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENYA JOSEPH,

    Plaintiff,

v.

RENAL CARE GROUP, INC., d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA,

    Defendant.

CASE NO. C15-5178 BHS

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Renal Care Group, Inc., d/b/a Fresenius Medical Care North America's ("Fresenius") motion for summary judgment (Dkt. 14). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On July 1, 2013, Joseph began working at Fresenius. Dkt. 12 ("Comp.") ¶ 4.2. During the course of her employment, Joseph made complaints of discrimination, harassment, and retaliation to her manager, supervisor, and human resources. *Id.* ¶¶ 4.8,

4.10, 4.15, 4.18, 4.20, 4.22, 4.23.  On August 22, 2014, Joseph's employment with Fresenius was terminated.  *Id.* ¶ 4.28.

On December 23, 2014, Joseph filed a voluntary petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Western District of Washington.  Dkt. 15, Exs. A, B.  Joseph was represented by a bankruptcy attorney.  Dkt. 19, Declaration of Kenya Joseph ("Joseph Dec.") ¶ 3.  In her bankruptcy schedules, Joseph checked the box "NONE" when asked whether she had any contingent or unliquidated claims.  Dkt. 15, Ex. B at 11.

Prior to filing for bankruptcy, Joseph met with another attorney, Thaddeus Martin ("Martin"), to discuss her employment with Fresenius and her legal rights.  Joseph Dec. ¶ 5.  Martin had several other projects at the time, and told Joseph that he could not provide her with any legal opinion until he thoroughly investigated the matter.  *Id.*  When Joseph filed for bankruptcy, Martin had not yet made a determination regarding Joseph's legal rights.  *Id.*  In February 2015, Martin advised Joseph that he had reviewed the matter and was going to file a complaint for damages on Joseph's behalf.  *Id.* ¶ 6.

On February 23, 2015, Joseph filed suit in Thurston County Superior Court.  Dkt. 1-5.  Joseph asserted claims arising out of her employment with Fresenius, including (1) hostile work environment, (2) disparate treatment, (3) wrongful discharge, (4) unlawful retaliation, (5) negligence, (6) intentional infliction of emotional distress, and (7) libel, slander, and defamation.  *Id.* ¶¶ 5.1–5.9.  Joseph's complaint, however, named the wrong defendant.  *See id.* ¶ 3.2; Joseph Dec. ¶ 6.  On March 25, 2015, Joseph's suit was removed to this Court.  Dkt. 1.

1    On March 30, 2015, the bankruptcy court entered an order confirming Joseph's
2    reorganization plan. Dkt. 15, Ex. E. On July 31, 2015, Joseph filed an amended
3    complaint in this suit, naming Fresenius as the proper defendant. *See* Comp. ¶ 3.2.
4    Joseph asserts the same causes of action. *Id.* ¶¶ 5.1–5.9.
5    On August 6, 2015, Defendants moved for summary judgment on the basis of
6    judicial estoppel. Dkt. 14. On August 10, 2015, Joseph's bankruptcy attorney filed
7    amended schedules that disclosed Joseph's claims against Fresenius with the bankruptcy
8    court. Dkt. 20, Declaration of Thaddeus Martin ("Martin Dec."), Ex. A. On August 24,
9    2015, Joseph responded and moved to continue Fresenius' motion. Dkt. 18.
10   On September 28, 2015, the Court granted Joseph's motion for a continuance
11   while the bankruptcy court addressed pending matters in Joseph's bankruptcy
12   proceeding. Dkt. 24. On December 18, 2015, the parties filed status reports. Dkts. 27,
13   28.
14   On January 7, 2016, the Court requested additional briefing and renoted Fresenius'
15   motion. Dkt. 29. On January 22, 2016, the parties filed opening briefs. Dkts. 30, 31. On
16   January 29, 2016, the parties filed reply briefs. Dkt. 32, 33.

## II. DISCUSSION

18   Fresenius moves for summary judgment, arguing (1) Joseph does not have
19   standing, and (2) judicial estoppel bars Joseph's claims. Dkts. 14, 30.

20   **A.   Summary Judgment Standard**

21   Summary judgment is proper only if the pleadings, the discovery and disclosure
22   materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Standing**

Fresenius argues Joseph does not have standing to pursue her claims in this suit because her claims belong to the bankruptcy estate and therefore only the bankruptcy trustee has standing to bring them.[1] Dkt. 30 at 10–11. To support its argument, Fresenius relies on *Estate of Spirtos v. One San Bernardino County Superior Court Case*, 443 F.3d 1172 (9th Cir. 2006). In *Spirtos*, the Ninth Circuit held that a Chapter 7 debtor did not have standing to bring claims on behalf of the estate because "the bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." *Id.* at 1176. Thus, in Chapter 7 proceedings, "*only* the trustee has standing to prosecute or defend a claim belonging to the estate." *In re DiSalvo*, 219 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999)).

In response, Joseph argues she filed for bankruptcy under Chapter 13 not Chapter 7. Dkt. 32 at 1. Joseph's point is well taken. Unlike a Chapter 7 debtor, a Chapter 13 debtor "remain[s] in possession of all property of the estate." *See* 11 U.S.C. § 1306(b).

---

[1] Fresenius first raised the issue of standing in its original reply brief. *See* Dkt. 21 at 8. As a general rule, a movant may not raise new arguments in its reply brief because it violates the opposing party's due process rights. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990). The Court therefore did not address Fresenius's standing argument in its previous order. Fresenius, however, has raised the issue of standing again in its additional briefing and Joseph has had the opportunity to respond.

A Chapter 13 debtor also possesses, exclusive of the trustee, "the rights and powers of a trustee . . . ." *Id.* § 1303.

It does not appear that the Ninth Circuit has explicitly addressed whether a Chapter 13 debtor has standing to litigate claims on behalf of the bankruptcy estate. *See Foronda v. Wells Fargo Home Mortg., Inc.*, C14-03513LHK, 2014 WL 6706815, at *4 (N.D. Cal. Nov. 26, 2014); *Wahlman v. DataSphere Techs., Inc.*, C12-1997JLR, 2014 WL 794269, at *5 (W.D. Wash. Feb. 27, 2014). "Without ruling on the issue, the Ninth Circuit has cited sister circuits for the rule that debtors in the Chapter 11 and Chapter 13 contexts can bring lawsuits in their own names." *Wahlman*, 2014 WL 794269, at *5 (citing *In re DiSalvo*, 219 F.3d at 1039).

Other circuit courts that have explicitly addressed this issue have determined Chapter 13 debtors possess standing to bring such claims. *See Foronda*, 2014 WL 6706815, at *4 (collecting cases). Similarly, district courts within the Ninth Circuit have held that Chapter 13 debtors have standing to do so as well. *See id.* at *5 (collecting cases); *see also Wahlman*, 2014 WL 794269, at *5. In the absence of any other authority, the Court finds that Joseph, as a Chapter 13 debtor, has standing to bring her claims in this suit.

**C.    Judicial Estoppel**

Fresenius also argues Joseph should be judicially estopped from bringing her claims because she did not initially disclose them in her bankruptcy proceeding. Dkt. 14. The Court deferred ruling on this issue in light of pending matters in Joseph's bankruptcy proceeding. Dkt. 24.

1       "Judicial estoppel is an equitable doctrine that precludes a party from gaining an
2 advantage by asserting one position, and then later seeking an advantage by taking a
3 clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778,
4 782 (9th Cir. 2001).  The Court considers the following factors when analyzing the
5 applicability of judicial estoppel: "(1) whether a party's later position is 'clearly
6 inconsistent' with its original position; (2) whether the party has successfully persuaded
7 the court of the earlier position[;] and (3) whether allowing the inconsistent position
8 would allow the party to 'derive an unfair advantage or impose an unfair detriment on the
9 opposing party.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting
10 *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).  "Judicial estoppel is a
11 discretionary doctrine, applied on a case-by-case basis." *Ah Quin v. County of Kauai*
12 *Dep't of Transp.*, 733 F.3d 267, 272 (9th Cir. 2013).

13       "In the bankruptcy context, the federal courts have developed a basic default rule:
14 If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy
15 schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the
16 action." *Id.* at 271.  The Bankruptcy Code imposes on debtors an affirmative, continuing
17 duty to disclose all pending and potential claims. *Hamilton*, 270 F.3d at 785.  "Judicial
18 estoppel will be imposed when the debtor has knowledge of enough facts to know that a
19 potential cause of action exists during the pendency of the bankruptcy, but fails to amend
20 his schedules or disclosure statements to identify the cause of action as a contingent
21 asset." *Id.* at 784.  This basic rule "comports fully with the policy reasons underlying the
22

doctrine of judicial estoppel: to prevent litigants from playing 'fast and loose' with the courts and to protect the integrity of the judicial system." *Ah Quin*, 733 F.3d at 271.

The Ninth Circuit has recognized an exception to the basic default rule. *See id.* at 272; *see also Dzakula v. McHugh*, 746 F.3d 399 (9th Cir. 2013). In *Ah Quin*, the Ninth Circuit determined that judicial estoppel does not apply where there was an inadvertent or mistaken omission from a bankruptcy filing. 733 F.3d at 271. The application of this exception depends on whether the plaintiff-debtor filed amended bankruptcy schedules that properly list the claim as an asset. *Id.* at 272, 274.

When a plaintiff-debtor has not corrected her bankruptcy filings, the Court applies a narrow interpretation of "inadvertence or mistake." *Id.* at 272. Under this narrow interpretation, the Court only asks "whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim." *Id.* at 271. However, when a plaintiff-debtor amends her bankruptcy filings, two of the three judicial estoppel factors are no longer met. *Id.* at 274. "Although the plaintiff-debtor initially took inconsistent positions, the bankruptcy court ultimately *did not accept* the initial position." *Id.* "Moreover, the plaintiff-debtor *did not obtain an unfair advantage*." *Id.* Rather than applying a presumption of deceit under these circumstances, the Court applies the ordinary understanding of "inadvertence or mistake." *Id.* at 276. In doing so, the Court "must determine whether the omission occurred by accident or was made without intent to conceal." *Id.*

In its previous order, the Court summarized the circumstances of this case as follows:

> In this case, it is undisputed that Joseph did not list her current claims as assets on her bankruptcy schedules before the bankruptcy court confirmed her reorganization plan. It is also undisputed that Joseph knew of the facts underlying her claims before she filed her bankruptcy petition. All of the alleged acts of discrimination, harassment, and retaliation occurred before or in conjunction with Joseph's termination from Fresenius, which happened four months before she filed her bankruptcy petition. Comp. ¶¶ 4.2, 4.28; Dkt. 15, Ex. A.
>
> Joseph, however, states that her omission was not intentional or done in a manner to "play fast and loose" with the courts. Joseph Dec. ¶ 9. Joseph further states that she did not know she had claims against Fresenius when she filed her bankruptcy petition. Joseph Dec. ¶ 5. Joseph also filed amended schedules and disclosures regarding her claims against Fresenius in the bankruptcy court. Martin Dec., Ex. A.

Dkt. 24 at 6. The Court declined to determine whether *Ah Quin* applied at that time. *See id.* at 6–7.

Fresenius now argues *Ah Quin* does not apply because Joseph's bankruptcy has not been "reprocessed" to address her amended schedules. Dkt. 30 at 6. Joseph, in turn, argues she properly amended her schedules, and therefore the Court should apply the ordinary meaning of "mistake or inadvertence" under *Ah Quin*. Dkt. 31 at 1, 3.

The Court was previously under the impression that the bankruptcy court would address Joseph's amended schedules. *See* Dkt. 24 at 6 (citing *Ah Quin*, 733 F.3d at 271 ("[O]nce a plaintiff-debtor has amended his or her bankruptcy schedules and the bankruptcy court has processed or reprocessed the bankruptcy with full information, two of the three primary [judicial estoppel] factors are no longer met.")). *Ah Quin*, however, involved a debtor whose bankruptcy was discharged and closed. 733 F.3d at 269. In contrast to the debtor in *Ah Quin*, Joseph's bankruptcy is still ongoing. This difference is key.

Under Bankruptcy Rule 1009, a debtor has the right to amend her schedules as a matter of course at any time before the bankruptcy case is closed. Bankr. R. 1009(a). "No court approval is required for an amendment, which is liberally allowed."[2] *In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998); *see also In re Magallanes*, 96 B.R. 253, 256 (9th Cir. 1988) ("The debtor may amend lists or schedules without court permission at any time during the pendency of the case."). Thus, when Joseph filed her amended schedules, no court approval was necessary. Joseph's amended schedules are now the operative documents in her bankruptcy proceeding.

Because Joseph corrected her bankruptcy filings to include her claims against Fresenius, the Court finds that the ordinary understanding of "inadvertence or mistake" should apply. *See Ah Quin*, 733 F.3d at 276. As noted above, the Court "must determine whether the omission occurred by accident or was made without intent to conceal." *Id.* "The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset—though those are certainly factors." *Id.* "The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 276–77.

With regard to Joseph's intent, Fresenius points out that Joseph did not amend her bankruptcy schedules until Fresenius moved for summary judgment on judicial estoppel grounds. Dkt. 30 at 7. Fresenius also argues that evidence filed by Joseph in the

---

[2] "A court may, however, deny the debtors leave to amend on a showing of a debtor's bad faith or of prejudice to creditors." *In re Michael*, 163 F.3d at 529 (internal quotation marks omitted). It does not appear that this occurred in the bankruptcy case. *See* Dkt. 30-1.

bankruptcy court shows that Joseph knew of her claims before filing for bankruptcy. *Id.* at 7–8. To support this argument, Fresenius relies on Joseph's retainer agreement with Martin. Dkt. 30-6. The agreement is dated August 22, 2014—the day that Joseph was terminated from Fresenius and four months before she filed for bankruptcy. *Id.* The agreement states: "Client retains Attorney to represent the Client in a discrimination/termination claim that occurred August 2014." *Id.* Fresenius also points to a declaration Joseph submitted to the bankruptcy court on October 26, 2015. Dkt. 30-8. In her bankruptcy declaration, Joseph states:

> When I filed my bankruptcy I had consulted with Thaddeus Martin regarding problems I had with a prior employer and inquired whether I had any sort of case against them for problems I had while employed there but he said he would have to review my case and was very busy. I did not list the claim or Mr. Martin on the original paperwork because as far as I knew at the time there was no case as I had not heard back from him in quite some time.

*Id.* ¶ 2.

On the other hand, Joseph has submitted a declaration in which she states her omission was not intentional or done in a manner to "play fast and loose" with the courts. Joseph Dec. ¶ 9. Joseph further states that she did not know she had claims against Fresenius when she filed her bankruptcy petition:

> At the time I filed a Chapter 13 bankruptcy, there was no determination made by Mr. Martin of my legal rights regarding the loss of my job and how I was treated. I did not know the employment claim was an asset at the time or immediately after I filed bankruptcy. When I first met with Mr. Martin, he specifically told me that he had a very busy calendar and would not have time to review any of my materials due to his busy calendar. Mr. Martin explained that employment cases are complex and he could not provide me any legal opinion until he thoroughly

ORDER - 11

investigated the matter. . . . I honestly had no idea if I even had a potential claim against my employer for what had happened.

*Id.* ¶ 5.

Viewing this evidence in the light most favorable to Joseph, the Court finds there is a material question of fact as to whether Joseph's omission occurred by mistake or inadvertence. Accordingly, the Court denies Fresenius' summary judgment motion on the basis of judicial estoppel.

## III. ORDER

Therefore, it is hereby **ORDERED** that Fresenius' motion for summary judgment (Dkt. 14) is **DENIED**.

Dated this 29th day of February, 2016.

BENJAMIN H. SETTLE
United States District Judge